UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| VAN-PACKER CO., an Illinois corporation, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | Case No. 4:22-cv-04090-SLD-RLH |
| ) | |
| AIRGAS USA, LLC, a Delaware limited ) | |
| liability company, ) | |
| ) | |
| Defendant. ) | |

ORDER

Before the Court is Defendant Airgas USA, LLC's ("Airgas") Motion for Summary Judgment, ECF No. 50. For the reasons that follow, the Motion for Summary Judgment is GRANTED.

BACKGROUND[1]

Plaintiff Van-Packer Co. ("Van-Packer") is a manufacturer of chimney and venting products, including rectangular grease duct products. Answer Third Am. Compl. 2, ECF No. 35. Van-Packer manufactured rectangular grease ducts for two different projects, the Hard Rock Hotel in New York and the KLA Kitchen in California (collectively "the Projects"). The Projects' ducts required welding 304 stainless steel ("SS") to 430 SS. Van-Packer manufactured the Projects' ducts, and the ducts subsequently cracked. Van-Packer has been purchasing products from Airgas, a seller of welding products, since at least 2000. Van-Packer asserts that Airgas is to blame for the duct cracks.

---

[1] At summary judgment, a court must "constru[e] the record in the light most favorable to the nonmovant." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Unless otherwise noted, this factual background is drawn from Airgas's statement of undisputed material facts, Mot. Summ. J. 2–7, Van-Packer Co.'s response thereto and its statement of additional material facts, Corrected Resp. Mot. Summ. J. 3–20, ECF No. 54, Airgas's reply thereto, Reply Mot. Summ. J. 1–8, ECF No. 55, and exhibits attached to those filings.

1

In 2018, Van-Packer experienced issues with cracked welds when welding two ends of a piece of 430 SS together to fabricate a round product which is not at issue in this case. Bill Sims, Van-Packer's plant manager at the time, reached out to Airgas employee Gene Rosengren via email on August 6, 2018 to ask about the cracked welds. Sims received from Rosengren a forwarded email from Todd Edge, a fabrication specialist for Airgas, which recommended certain specifications: "430/310/309 with 100/AR." Aug. 6, 2018 Email from Rosengren to Sims, Resp. Mot. Summ. J. Ex. 1, ECF No. 51-1 at 2. Sims attempted to follow up on this email—no response is in the record.

On April 22, 2020, Sims noticed another issue with cracked welds, this time involving welding 304 SS to 430 SS as part of fabricating the at-issue rectangular grease ducts. According to Sims, he called Edge, and they discussed the cracked welds issue; Edge recommended switching from 308L wire to 309L wire to solve the cracking issue. Sims testified that Edge stated that annealing, a heat treatment, was not necessary. Sims followed up that phone call with an email, offering to send to Airgas a sample of the cracked welds. Edge did not respond.

On April 30, 2020, Sims had a phone conversation with Mark Kowalski, a weld process specialist for Airgas. According to Sims, he and Kowalski discussed Sims's conversation with Edge, and Kowalski did not disagree with any of Edge's recommendations and thought that "the best way to move forward was using 309L wire." Sims Dep. 120:13–22, Mot. Summ. J. Ex. B, ECF No. 50-2. That same day, Sims sent an email to Robin Rediger, Van-Packer's general manager at the time, wherein Sims stated that the welding specialists he spoke with in the previous week or so "want[ed] [Van-Packer] to switch to 309 wire" which was "traditionally used for welding dissimilar steels." Apr. 30, 2020 Email from Sims to Rediger, Resp. Mot. Summ. J. Ex. 7, ECF No. 51-7. Using the 309 wire would "hopefully eliminat[e] the cracking

issue" in the rectangular grease ducts. *Id.* Sims also mentioned to Reidger that the cracked products "were welded by a welder in training" and that the welding specialists, *i.e.*, people like Edge and Kowalski, wanted to "blame it on the new welder," but Sims had pressed the issue to ensure the cracking did not happen again, prompting the conversation "about switching wire." *Id.*

In July and August 2020, Kowalski came to Van-Packer's facility in connection with a new welding tool which Van-Packer had purchased to address warpage in its products. Although not the purpose of Kowalski's visit, Sims and Kowalski "had small talk on [Van-Packer's] past problem of the weld cracking" and Kowalski did not recommend that Van-Packer "should be doing anything different than [what it] w[as] doing." Sims Dep. 227:20–228:12. Airgas disputes Van-Packer's characterization of the statements from Edge and Kowalski, specifically highlighting Sims's use of qualified language like "maybe" and "thought" to suggest that neither Edge nor Kowalski made affirmative statements that the cracked welds issue would be solved by using 309L wire without annealing. *E.g.*, Reply Mot. Summ. J. 2, ECF No. 55 (quoting Sims Dep. 93:3–5).

When Van-Packer decided to switch to using 309L wire in April 2020, it already had some 309L wire in its inventory. As work continued on the rectangular grease ducts, Van-Packer made six purchases of 309L wire from Airgas via six purchase orders between July 2020 and October 2020. Airgas sent invoices for each of the six orders to Van-Packer. Van-Packer paid all six invoices. On May 25, 2021, during the period when the rectangular grease ducts were being shipped to and installed for the Projects, Sims sent an email to Rosengren and Kowalski which stated that the cracked welds issue was "back" and that the "material welded with 309L wire" was "breaking." May 25, 2021 Email from Sims to Rosengren and Kowalski,

3

Resp. Mot. Summ. J. Ex. 10, ECF No. 51-10 at 3; Sims Dep. 163:17–20. Van-Packer had to remake the Projects' rectangular grease ducts.

Van-Packer filed this lawsuit on June 6, 2022. *See generally* Compl., ECF No. 1. A Third Amended Complaint was filed on November 10, 2022. *See generally* Third Am. Compl., ECF No. 28. Van-Packer asserts that Airgas should be liable for the losses it incurred because Airgas assertedly warranted that if Van-Packer "changed from 308L to 309L wire with no annealing required for welding dissimilar metals (i.e., 304 SS to 430 SS), doing so would remedy Van-Packer's cracked weld issues." *Id.* at 10. Airgas successfully sought the dismissal of Van-Packer's Count I, which asserted a claim for negligent misrepresentation. *Id.* at 4–7; *see generally* Aug. 9, 2023 Order, ECF No. 33. An expert for Van-Packer, Bob Olson, died before he was able to be deposed in this lawsuit. Van-Packer replaced Olson with another expert, Zahirul Hoque. Airgas moves for the entry of summary judgment on the remaining two counts of Van-Packer's Third Amended Complaint, specifically Count II for breach of implied warranty of fitness for a particular purpose, Third Am. Compl. 7–10, and Count III for breach of express warranty, *id.* at 10–11. *See generally* Mot. Summ. J.; Reply Mot. Summ. J. Van-Packer opposes the motion for summary judgment. *See generally* Corrected Resp. Mot. Summ. J., ECF No. 54.[2]

## DISCUSSION

### I. Legal Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant in a summary judgment motion bears the initial burden of production; it must

---

[2] A corrected version of Van-Packer's response was docketed, correcting a "typographical error." *See* July 7, 2025 Text Order (quotation marks omitted). The exhibits were not re-filed so the Court cites to the exhibits attached to the original response, ECF No. 51.

point the court to the materials in the record that "demonstrate the absence of a genuine issue of material fact" for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the nonmovant bears the ultimate burden of persuasion on a particular issue, however, the movant can meet its initial burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (quotation marks omitted). Once the movant discharges its initial burden, the burden shifts to the nonmovant to "make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322. The court must construe the record in the light most favorable to the nonmovant, *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003), "resolving all factual disputes and drawing all reasonable inferences in favor of [the nonmovant]," *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). The nonmovant "is not entitled to the benefit of inferences that are supported by only speculation or conjecture." *Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 599 (7th Cir. 2014) (quotation marks omitted). "[T]he mere existence of *some* alleged factual dispute is insufficient to defeat a motion for summary judgment," *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015) (quotation marks omitted), as "there must be evidence on which the jury could reasonably find for the [nonmovant]," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

II. **Analysis**

Airgas advances three primary arguments in support of its Motion for Summary Judgment: (1) Van-Packer has not established that the breach of the claimed warranties was a proximate cause of the failed welds in the Projects' rectangular grease duct, Mot. Summ. J. 7–11; (2) Van-Packer has not established that any such warranties were ever made by Airgas, *id.* at 11–

15; and (3) Airgas disclaimed the warranties, *id.* at 15–21.  The proximate cause issue is dispositive, such that the Court need not consider the other two arguments.

Van-Packer asserts that Airgas created an implied warranty that the 309L wire, without annealing, would be fit for the particular purposes of "welding dissimilar metals" and "remedying the cracked welds issue experienced by Van-Packer." Third Am. Compl. 8–9.  The warranty underpinning the express warranty claim is essentially identical—again, Airgas allegedly expressly warranted that if Van-Packer "changed from 308L to 309L wire with no annealing required for welding dissimilar metals (i.e., 304 SS to 430 SS), doing so would remedy Van-Packer's cracked weld issues." *Id.* at 10.

Under Illinois law,[3] a warranty of fitness for a particular purpose is implied for certain contracts.  *See* 810 ILCS 5/2-315.  To prove a breach of an implied warranty of fitness for a particular purpose, a plaintiff must show:

> (1) a sale of goods, (2) that the seller had reason to know of any particular purpose for which the goods are required, (3) that plaintiff, as buyer of the goods, was relying upon seller's skills or judgment to select suitable goods, and (4) that the goods were not fit for the particular purpose for which they were used.

*Maldonado v. Creative Woodworking Concepts, Inc.*, 796 N.E.2d 662, 666 (Ill. App. Ct. 2003) (citing *Crest Container Corp. v. R.H. Bishop Co.*, 445 N.E.2d 19, 23–24 (1982)).  To prove a breach of an express warranty, a plaintiff must show:

> (1) the terms of the warranty; (2) a breach or failure of the warranty; (3) a demand upon the defendant to perform under the terms of the warranty; (4) a failure by the defendant to do so; (5) compliance with the terms of the warranty by the plaintiff; and (6) damages measured by the terms of the warranty.

---

[3] The Court analyzes these issues under Illinois law because Van-Packer invokes the Court's diversity jurisdiction, Answer Third Am. Compl. 2, and the parties both use Illinois law in their briefing, *see, e.g.*, *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014) (stating that in the absence of a choice-of-law issue, "the federal court may simply apply the forum state's substantive law").

6

*Wright v. Walmart, Inc.*, 688 F. Supp. 3d 794, 807 (S.D. Ill. 2023) (quotation marks omitted). Both claims require a showing of proximate causation between the breach of the warranty and the claimed loss. *See Crest*, 445 N.E.2d at 25 ("[The p]laintiff must prove proximate causation in warranty cases."); *Bluestein v. Upjohn Co.*, 430 N.E.2d 580, 586 (Ill. App. Ct. 1981) ("Causation is an essential element of a breach of warranty theory."); *Holden Metal & Aluminum Works, Ltd. v. Wismarq Corp.*, No. 00 C 0191, 2004 WL 1088356, at *2 (N.D. Ill. May 12, 2004) ("Causation is a critical element in contract law."); 810 ILCS 5/2-314 cmt. 13 ("In an action based on breach of warranty, it is of course necessary to show not only the existence of the warranty but the fact that the warranty was broken and that the breach of the warranty was the proximate cause of the loss sustained."); *accord Malawy v. Richards Mfg. Co.*, 501 N.E.2d 376, 388 (Ill. App. Ct. 1986) (noting that evidence was required to demonstrate that "plaintiff's injuries were proximately caused by breaches of implied warranties of merchantability and fitness for a particular purpose"); *Walker v. Macy's Merch. Grp., Inc.*, 288 F. Supp. 3d 840, 869 (N.D. Ill. 2017) ("In an action based upon breach of implied warranty ... it is necessary to show the existence of the warranty, its breach, and *proximate cause*." (alterations in original) (quoting *Wheeler v. Sunbelt Tool Co.*, 537 N.E.2d 1332, 1341 (Ill. App Ct. 1989))).

    The failure to muster any causal evidence is fatal to a warranty claim. *See Harris v. Gen. Motors Corp.*, 34 F. App'x 487, 489–90 (7th Cir. 2002) (affirming grant of summary judgment on warranty claims where the plaintiff-driver failed to provide any evidence causally connecting an airbag's assumedly defective deployment with her injuries); *Giles v. Wyeth, Inc.*, 500 F. Supp. 2d 1063, 1070–71 (S.D. Ill. 2007) (granting summary judgment on express warranty claim where the plaintiff had "failed to come forward with any evidence that the breach of the alleged warranties proximately caused" the at-issue injuries); *cf. Royal Bus. Machs., Inc. v. Lorraine*

7

*Corp.*, 633 F.2d 34, 46 (7th Cir. 1980) ("[A] plaintiff may not recover for breach of express or implied warranty where the facts proven show that there are several possible causes of an injury, for one or more of which the defendant was not responsible and it is just as reasonable and probable that the injury was the result of one cause or the other . . . ." (quotation marks omitted)). Dissatisfaction with an outcome is not sufficient to blame a warrantor—there must be some evidence causally connecting the breach of the warranty to the warrantee's injuries.

      Here, Van-Packer does not point to any evidence about what caused the Projects' rectangular grease duct cracks. As far as the record shows, the cracked rectangular grease ducts were never retrieved from the Projects and were not tested by Van-Packer or its agents.[4] Van-Packer's expert, Hoque, conducted an analysis of cracked welds provided by Van-Packer but determined that they contained 308 wire, not 309L wire. Hoque Dep. 127:21–128:1, 159:11–13, Mot. Summ. J. Ex. D, ECF No. 50-4. Hoque opined that there were many potential causes for the cracks, such as the chemical composition and material properties of the SS itself or improper welding technique. *See* Mot. Summ. J. 9–10 (citing Hoque Dep. 75, 101–102, 105–14, 119–20, 132–37, 145–50, 153–58, 165–66, 171–75, 177, 181–86). Hoque also opined that a post-weld heat treatment may not have prevented the welds from cracking. Hoque Dep. 198:6–9, 200:19–201:4. In its briefing, Van-Packer seeks to discredit the significance of Hoque's testimony. *See* Corrected Resp. Mot. Summ. J. 29–31 ("The only material portion of Hoque's testimony and opinion is when he explained how 308L, 304-8, or 304-AHL, but not 309L wire, would be the recommended wire for the Van-Packer welding and product application at issue."). It

---

[4] Van-Packer asserts that two samples were sent to Hoque's employer and that Hoque only tested the first sample, which was from when Sims first noticed and sought solutions to the issue of cracked welds in Van-Packer's rectangular products in April 2020. *See* Corrected Resp. Mot. Summ. J. 2, 8, 29–30. The details related to the second sample—including when it was sent, whether it was from the Projects, whether it was ever tested by anyone, and why it was not tested by Hoque—are left unexplained by Van-Packer.

emphasizes that Hoque did not analyze anything involving 309L wire. *Id.* at 30 ("Hoque's analysis is clearly based on only the first sample sent by Van-Packer and he testified he does not know what wire was used for product shipped to the [P]rojects."); *see also* Sims Dep. 181:5–16 (testifying that Van-Packer sent a sample to Hoque's employer from the welds that had cracked in April 2020, prior to Van-Packer switching from using 308 wire).

Airgas makes two related arguments based on Hoque's analysis and Van-Packer's use thereof. First, it argues that because Hoque analyzed welds that used 308 wire instead of 309L wire, there is no evidence of a "causal connection between the claimed warranties associated with the sale of 309 L wire and the cracked welds." Mot. Summ. J. 10. Second, it argues that Van-Packer cannot even demonstrate that 309L wire was used in the Projects because Hoque analyzed welds using 308 wire instead of 309L wire. *See id.* at 8 ("Van-Packer cannot claim breach of warranties associated with the sale of a product it did not use."). Van-Packer responds to the second argument that the evidence at least shows that 309L wire was used for the Projects' rectangular grease ducts. Corrected Resp. Mot. Summ. J. 29–30. The Court agrees that the limited evidence on this issue establishes that 309L wire was used for the Projects. *See* Sims Dep. 215:21–216:5 (testifying that only 309L wire was used for the Projects). Airgas's second argument sweeps too broadly.

However, Airgas's first argument is on point—it rightfully emphasizes that Van-Packer's failure to analyze the cracks in the Projects' rectangular grease ducts means that Van-Packer has offered no competent evidence whatsoever as to what caused them to crack. *See* Reply Mot. Summ. J. 10–12. Consider a case involving a defective pipe where a general warranty provided that materials and equipment would "be free from defect or deficiency for one (1) year." *ExxonMobil Oil Corp. v. Amex Constr. Co.*, 702 F. Supp. 2d 942, 959 (N.D. Ill. 2010) (quotation

9

marks omitted). The court found that "any damages caused by that defect or deficiency [we]re rightly attributed to [the defendant] so as to satisfy the element of proximate causation" because: (1) both parties' experts testified that there was a defect in the pipe; (2) the plaintiff's expert testified that the defendant's agents failed to properly fuse a joint in the pipe; (3) the defendant's expert testified that the pipe would not have failed but for that defect; and (4) the defendant admitted that the pipe "was not constructed in a manner that rendered it fit for its intended purpose." *Id.* at 964–65. Here, there is no evidence causally connecting the warranties' breaches to Van-Packer's injuries, which is an essential element of its claims. *See Crest*, 445 N.E.2d at 25; *Bluestein*, 430 N.E.2d at 586; *Holden Metal & Aluminum Works*, 2004 WL 1088356, at *2; 810 ILCS 5/2-314 cmt. 13. Van-Packer has wholly failed to muster evidence analyzing how the Projects' rectangular grease ducts cracked—a required showing to resist the entry of summary judgment. *See Harris*, 34 F. App'x at 489–90; *Giles*, 500 F. Supp. 2d at 1070–71.

Van-Packer asserts that there are at least "genuine disputes of material fact" which preclude the entry of summary judgment. Corrected Resp. Mot. Summ. J. 28. But this is not a case of competing evidence—it is an absence of evidence. Van-Packer provides nothing but speculation connecting the warranties and damages, which is not sufficient to withstand summary judgment. *See, e.g.*, *Osborn v. JAB Mgmt. Servs., Inc.*, 126 F.4th 1250, 1258 (7th Cir. 2025) ("[T]he nonmovant must come forward with enough evidence to place her version of events beyond the level of mere speculation or conjecture." (quotation marks omitted)).

Van-Packer also asserts that Airgas's arguments proceed from a flawed understanding of its claims, *i.e.*, Airgas improperly implies that "Van-Packer's claims are based on the 309L wire itself or Airgas's failure to advise Van-Packer to anneal the product *caused the cracked welds*." Corrected Resp. Mot. Summ. J. 28–29. Van-Packer states instead that Airgas sold Van-Packer

on the idea that 309L wire would be the cure-all for its cracked weld problem, such that it is "is seeking relief for the damages caused by the 309L wire purchased from Airgas *failing to remedy/prevent the cracked welds*." *Id.* at 29. Van-Packer posits that it need only demonstrate that the good "not acting otherwise as warranted [wa]s a but-for cause of foreseeable damages for which the plaintiff is seeking relief" and that it has satisfied that burden because "Airgas represented 309L wire was the solution to the cracked welds problem, yet 309L wire did not remedy the cracked welds." *Id.* Van-Packer's distinction between causing cracks and failing to prevent cracks does not negate its burden to connect the warranties to its damages. The implication of Van-Packer's argument is that the mere fact that the Projects' rectangular grease ducts cracked even though Van-Packer used 309L wire is sufficient to prove proximate cause. But this argument is circular—the issue here is still that the Court has no evidence as to why the ducts cracked.

Finally, Van-Packer argues that other potential causes—such as welder technique or material composition—were reasonably foreseeable causes of the Projects' rectangular grease duct cracks. Corrected Resp. Mot. Summ. J. 30–32. Van-Packer asserts that Edge's initial warranty in April 2020 that using 309L wire would remedy the cracked welds issue was not "preface[d]," *i.e.*, limited by, "technique or procedure." *Id.* at 31. Kowalski visited Van-Packer's facility in July and August 2020, allowing him to "witness[] the welding techniques and materials used by Van-Packer" for the Projects' rectangular grease ducts, and reiterated that 309L wire would remedy the issue—he did not limit this recommendation based upon Van-Packer's techniques or materials. *Id.* That "chemical composition, welding technique and other variables could affect the 309L wire's effectiveness in preventing cracked welds" was only mentioned to Van-Packer by Kowalski "after the cracked welds had already developed with

11

products for which 309L wire was used." *Id.* at 31; *see also* May 25, 2021 Email from Kowalski to Sims & Rosengren, Resp. Mot. Summ. J. Ex. 10, ECF No. 51-10 (identifying possible causes of the cracks, including welder technique and the "[c]hemical composition" of the "[b]ase metal itself"). Van-Packer argues that it has demonstrated an unbroken chain of proximate causation because Airgas did not caveat its warranty regarding 309L wire based upon those variables despite being demonstrably aware that such variables could impact the 309L wire's effectiveness. Airgas describes this as Van-Packer's "absurd, unsubstantiated proposition that Airgas somehow knew, or should have known, about the flawed welding techniques and materials, and that the claimed warranty included the use of flawed welding techniques and materials." Reply Mot. Summ. J. 11.

Even assuming that Van-Packer is correct that Airgas had knowledge of every relevant aspect of Van-Packer's production process and materials based on a few conversations and in-person visits, it still does not excuse Van-Packer's failure to provide causal evidence connecting the warranties to the Projects' rectangular grease duct cracks. As Airgas rightfully notes, "[t]he cracks could have been caused by the methods by which the Van-Packer products were loaded, transported, unloaded, stored, and/or installed after they were manufactured, or other factors, and have nothing to do with the way they were manufactured." *Id.* at 11. More fundamentally, the issue is not whether these other causes were reasonably foreseeable and therefore severed a chain of proximate causation. Instead, the issue is that there is no chain of proximate causation to sever—the record is devoid of any evidence regarding what caused the cracks, such that summary judgment is warranted against Van-Packer on its warranty claims. *See Harris*, 34 F. App'x at 489–90; *Giles*, 500 F. Supp. 2d at 1070–71.

12

Simply put, Van-Packer failed to provide any evidence that using 309L wire without annealing was causally connected to the Projects' rectangular grease duct cracks, and therefore has failed to establish evidence which would allow a reasonable trier of fact to find in its favor on either its express or implied warranty claims. Because the Court finds in Airgas's favor on this point, the Court need not consider whether the warranties were ever formed or disclaimed.

## CONCLUSION

Accordingly, Defendant Airgas USA, LLC's Motion for Summary Judgment, ECF No. 50, is GRANTED. The Clerk is directed to enter judgment and close the case.

Entered this 20th day of August, 2025.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE
